United States District Court
Eastern District of New York

1:18-cv-05577-WFK-RER

Dakota Campbell-Clark, individually and
on behalf of all others similarly situated

Plaintiff

- against -

Blue Diamond Growers

Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss

SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552 – Tel.

Attorneys for Plaintiffs

Table of Contents

Table of Authorities ............................................................................................................... 3

Introduction ........................................................................................................................... 2

I.     Legal Standard on Motion to Dismiss ........................................................................... 2

II.    Product Names of "Almond Nut-Thins" is Misleading .................................................. 4

        A.   The Products' Name Gives the Impression they Will Contain More
              Almond Component than Other Ingredients ................................................... 4

III.   Food Names are not Static But Evolve Based Upon Various Factors .................................. 5

        A.   Evolution of Foods and Consumer Preferences Cause Consumers to
              Seek Alternatives to Wheat and Grain ............................................................ 6

        B.   Technology Allows Traditional Foods to be Made with New
              Ingredients ....................................................................................................... 7

        C.   Defendant Should be Judicially Estopped from Arguing that
              Traditional Foods Must Always be Made From Traditional
              Ingredients ....................................................................................................... 9

        D.   It is Plausible a Reasonable Consumer Would Expect the Almond
              Component to be Predominant ....................................................................... 10

IV.   The FAC Adequately Pleads Injury ................................................................................ 11

V.    Plaintiff's Unjust Enrichment Claims are Adequately Pleaded ......................................... 12

VI.   Plaintiff's Express and Implied Warranty Claims are Sufficient ....................................... 13

        A.   Privity is Not Required ................................................................................... 13

        B.   Defendant's Claim of Lack of Pre-Suit Notice is Conclusory ......................... 15

           1.   Whether Notice is Sufficient is a Question of Fact ......................... 16

           2.   Pre-Suit Notice Not Required ......................................................... 16

VII.  Plaintiff Plausibly Alleges Defendant's Fraudulent Intent ................................................ 17

VIII. Plaintiff has Standing to Seek Injunctive Relief ............................................................... 18

IX.   Conclusion ................................................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

*Ackerman v. Coca–Cola Co.*,
   09–cv–395, 2013 WL 7044866
   (E.D.N.Y. July 18, 2013) ................................................................................ 18, 19

*Ang v. Whitewave Foods Co.*,
   No. 13-cv-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ............................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 2, 3

*Avola v. Louisiana-Pacific Corp.*,
   991 F.Supp.2d 381 (E.D.N.Y. 2013) ........................................................................ 13

*Belfiore v. Procter & Gamble Co.*,
   F.Supp.3d 440 (E.D.N.Y. 2014) ............................................................................... 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 2

*CBS Inc. v. Ziff-Davis Publ'g Co.*,
   553 N.E.2d 997 (N.Y. 1990) ................................................................................... 13

*Corsello v. Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012) ............................................................................................. 12

*Daniel v. Mondelez Int'l, Inc.*,
   287 F.Supp.3d 177 (E.D.N.Y. 2018) ....................................................................... 12

*Delgado v. Ocwen Loan Servicing Company, LLC*,
   No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758,
   2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014) ......................................................... 18

*Donahue v. Ferolito, Vultaggio & Sons*,
   13 A.D.3d 77 (N.Y. 1st Dep't 2004) ........................................................................ 13

*Ebin v. Kangadis Food Inc.*,
   No. 13-cv-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ............................... 13

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) ............................................................................ 2

*Fischer v. Mead Johnson Labs.*,
   41 A.D.2d 737, 341 N.Y.S.2d 257 (1st Dep't. 1973)............................................. 17

*Foman v. Davis*,
   371 U.S. 178 (1962) ....................................................................................... 20

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ................................................................................ 2

*Gitson v. Trader Joe's Co.*,
   No. 13-cv-01333, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013)............................. 10

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................... 12

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
   774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ............................................................. 3

*Hanley v. Chicago Title Ins. Co.*,
   No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) .............................. 2

*Hubbard v. Gen. Motors Corp.*,
   No. 95-cv-4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)................................. 16

*In re SKAT Tax Refund Scheme Litig.*,
   356 F.Supp.3d 300 (S.D.N.Y. 2019) ................................................................... 12

*Isnady v. Village Of Walden*,
   No. 18-cv-02662 (S.D.N.Y. July 19, 2019) ........................................................... 9

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16- cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................... 11

*Kennedy v. F.W. Woolworth Co.*,
   205 A.D. 648, 200 N.Y.S. 121 (1st Dep't. 1923).................................................. 17

*Koehler v. Litehouse, Inc.*,
   2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635
   (N.D. Cal. Dec. 13, 2012)................................................................................. 19

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ............................................................................. 20

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) ............................................................................... 6

*Neri v. R.J. Reynolds Tobacco Co.*,
   No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000) ............................................. 17

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ........................................................................................................... 9

*Niedernhofer v. Wittels*,
   No. 17-cv-4451 (S.D.N.Y. July 31, 2018) ............................................................................. 13

*O'Brien v. Nat'l Prop. Analysts Partners*,
   936 F.2d 674 (2d Cir. 1991) ................................................................................................ 18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) ........................................................................................................... 3

*Painter v. Blue Diamond Growers*,
   No. 17-cv-55901, 2018 WL 6720560
   (9th Cir. Dec. 20, 2018) ...................................................................................................... 10

*Paulino v. Conopco, Inc.*,
   No. 14-cv-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ............................................. 16

*Promuto v. Waste Mgmt., Inc.*,
   44 F.Supp.2d 628 (S.D.N.Y. 1999) ...................................................................................... 13

*Quinn v. Walgreen Co.*,
   958 F.Supp.2d 533 (S.D.N.Y. 2013) .................................................................................... 16

*Raines v. Byrd*,
   521 U.S. 811 (1997) ........................................................................................................... 19

*Randy Knitwear, Inc. v. American Cyanamid Co.*,
   11 N.Y. 2d 5 (1962) ............................................................................................................ 13

*Red v. Kraft Foods, Inc.*,
   No. 10-cv-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ............................................. 11

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
   369 F.3d 113 (2d Cir. 2004) ................................................................................................ 9

*Silverstein v. R.H. Macy & Co.*,
   266 A.D. 5, 40 N.Y.S.2d 916 (1st Dep't. 1943) ................................................................... 17

*Singleton v. Fifth Generation, Inc.*,
   No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ................................................. 16

*Solak v. Hain Celestial Group, Inc.*,
   No. 17-cv-00704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ........................................... 11

*Weisblum v. Prophase Labs, Inc.*,
   88 F.Supp.3d 283 (S.D.N.Y. 2015) ..................................................................... 14

*Weisman v. LeLandais*,
   532 F.2d 308 (2d Cir. 1976) ............................................................................... 2

*Wick v. Wabash Holding Corp.*,
   801 F.Supp.2d 93 (W.D.N.Y. 2011) ................................................................. 13

*Williams v. Calderoni*,
   2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012),
   *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) ........................... 4

*Woods v. Maytag Co.*,
   807 F.Supp.2d 112 (E.D.N.Y. 2011) .................................................................. 2

*Yee Ting Lau v. Pret A Manger (Usa) Limited*,
   No. 17-cv-5775 (S.D.N.Y. Sept. 28, 2018) ...................................................... 11

### Statutes

N.Y. General Business Law § 349 .......................................................................... 3

N.Y. General Business Law § 350 .......................................................................... 3

N.Y. U.C.C. § 2-313(1)(a) ...................................................................................... 14

N.Y. U.C.C. § 2-318 ............................................................................................... 15

N.Y. U.C.C. § 2-607 ............................................................................................... 15

### Other Authorities

N.Y. U.C.C. § 2-313, cmt.2 .................................................................................... 15

### Rules

Fed. R. Civ. P. 8(d) ............................................................................................... 12

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 2

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 20

### Regulations

21 C.F.R. § 102.5(a) ................................................................................................ 5

21 C.F.R. § 102.5(b) ............................................................................................. 4, 5

21 C.F.R. § 102.5(b)(2)..................................................................................................................... 4

21 C.F.R. §101.4(b) .......................................................................................................................... 8

**INTRODUCTION**

Plaintiff submits this memorandum of law in opposition to defendant's Motion to Dismiss the First Amended Complaint ("FAC"), and Memorandum of Law in Support ("Def. MOL").  For the reasons below, the motion should be denied it in its entirety.

**I.      LEGAL STANDARD ON MOTION TO DISMISS**

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)). A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," Id. at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557. However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiffs need only

2

"nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548. The representations violate New York General Business Law ("GBL") §§ 349 and 350, prohibiting "[d]eceptive acts or practices" and "[f]alse advertising" because they contain unauthorized implied nutrient content claims ("low sugar") under the guise of "factual statements" and a brand name.  FAC, ¶¶ 51-69.

The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted). New York General Business Law ("GBL") §§ 349

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Whether a particular act or practice is deceptive is intensely-factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)

. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556-57; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6)

standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

## II.   PRODUCT NAMES OF "ALMOND NUT-THINS" IS MISLEADING

Defendant's position disregards the well-pleaded allegations of the FAC which when taken as true on a motion to dismiss, weigh heavily against dismissal.  These facts included (1) evolution of foods, (2) new technologies for producing traditional foods with novel ingredients, (3) increased awareness of health issues associated with consumption of traditional foods made with traditional ingredients and (4) defendant's *promotion* of new variations on familiar foods.

### A.   The Products' Name Gives the Impression they Will Contain More Almond Component than Other Ingredients

To prevent deception, requirements exist such that when an ingredient is promoted that "has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case," the front label is required to indicate the percentage of that ingredient in the product.   21 C.F.R. § 102.5(b)(2) ("The percentage of a characterizing ingredient or component shall be declared by the words "containing (or contains) _ percent (or %) ___" or "_ percent (or %) ___" with the first blank filled in with the percentage expressed as a whole number not greater than the actual percentage of the ingredient or component named and the second blank filled in with the common or usual name of the ingredient or component.").

Defendant's Products, named "Almond Nut-Thins," gives consumers the impression that almonds will be the main component, even though they are "rice-flour based crackers, which happen to include equivalent amounts of "almonds" as they do "potatoes." FAC ¶ 39; see 21 C.F.R.

§ 102.5(a) (guidelines for determining the "common or usual name" of a food); see FAC ¶ 40 ("Plaintiff believed the Almond Products were made with almonds as predominant ingredient in the same way consumers would observe products identified as "wheat crackers" and "rice crackers").

The representations emphasizing almonds to the exclusion of the other ingredients "create[s] an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case."  21 C.F.R. § 102.5(a)-(b); see FAC 43-44 (describing the representations as "misleading, false, deceptive" because it "creates an erroneous impression that the more valuable component – nuts, in the form of almond-based ingredients – are present in amounts greater than they actually are," and "emphasizes the contribution and amount of almonds relative to the non-almond ingredients – rice and potatoes.").

Defendant's conduct caused consumers to pay more than they otherwise would have because "The amount of almond ingredients has a material bearing on price and/or consumer acceptance of the Products."  FAC 46; 21 C.F.R. § 102.5(b).

## III.   FOOD NAMES ARE NOT STATIC BUT EVOLVE BASED UPON VARIOUS FACTORS

The American food supply, like the nation it represents, is an ever-changing combination of the cultures and people who have made this country the world's greatest "melting pot."  Like the demographic composition of our country, the foods that we eat are ever-changing, and their definitions, to the dismay of some, are not set in stone.

The FAC was clear that "evolution of foods, meshing of cultures and advances in technology have made it such that people can purchase products such as 'almond milk' or 'vegan butter' – most people understand that the first term modifies the second such that neither contains dairy."  FAC ¶ 12; ¶ 94 ("Defendant's purpose was to mislead consumers who seek common foods

5

(i.e., crackers) composed of non-common (i.e., almonds) ingredients.").

Courts have consistently recognized that consumers are adept enough to recognize that terms traditionally used to describe a particular type of food have become part of the lexicon, such that when they are modified by a term contrary to the traditional meaning of the second term, no consumer would plausibly expect the product to conform to the modified word.

A.   <u>Evolution of Foods and Consumer Preferences Cause Consumers to Seek Alternatives to Wheat and Grain</u>

Defendant's substantive argument begins by stating, "**Nuts are Obviously Not the Crackers' Primary Ingredient and a Reasonable Consumer Would Not Believe That They Are**." Def. Motion at 4-5 citing *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) ("*In our case of Cheez-Its crackers*, in contrast, reasonable consumers are likely to understand that crackers are typically made predominantly of grain.") (emphasis added).

The Second Circuit did not set a bright-line rule about the types of ingredients that could be used in crackers.  The FAC specifically acknowledged defendant's main contention, that generally, and in previous decades, "it would have been difficult to imagine a cracker identified in this country as made from anything other than wheat," even from other grains, like rice.  FAC ¶ 10-11 (citing the example "Senbei," or rice crackers as introduced by Japanese culture and culinary traditions).

The FAC showed that consumption of wheat and grain was in sharp decline by Americans. FAC ¶ 17 (attributed to gluten intolerance, general criticism of wheat's effects on the human body and aversion to carbohydrates); ¶ 27 ("Manufacturers and retailers have responded to the growing demand for gluten-free products and "[A]nything that is in the gluten world is being replaced in the gluten-free world—breads, cookies, brownies, rolls.").

B.    <u>Technology Allows Traditional Foods to be Made with New Ingredients</u>

The FAC alleged it is plausible to expect that crackers and other baked goods could be made containing non-wheat and grain ingredients. FAC ¶ 28 ("advances in milling and sifting [of non-traditional commodities] which produce textures similar to wheat flour and much greater consistency than in the past").

Almonds, the products grown and processed by defendant, are one of those alternatives to wheat.   The FAC alleged correctly that defendant's crackers contain "almond flour," which defendant has brazenly denied.   Def. Mem. at 8 ("Oddly, the AC detours to an extended and convoluted discussion about BDG's marketing of an entirely different product, almond flour.")

However, reasonable consumers and the Court are able to take notice that a flat, crispy, circular cracker (right column) cannot contain an actual almond, which is round, oval shaped and has a hard texture (left column).

<u>Almonds</u>                                          <u>Defendant's Products</u>




Common sense and a basic food processing textbook tells us that any raw agriculture commodity, to be converted into a baked good, must be ground into "a fine soft powder," which, contrary to defendant's position, is a definition of flour.[1]  Though "flour" has historically been associated with "finely milled wheat," its definition is not exclusively linked to any one commodity.

Defendant bizarrely claims the products do not contain "almond flour." Def. MOL at 8 ("Noticeably absent from this discussion, however, are any allegations that the Crackers contain almond flour (because they do not) or even that the plaintiff *believed* that they did").  Defendant boasts that "almond flour" is not contained in the ingredient list.  Def. MOL at 8 ("neither the front of the Crackers' packaging – which clearly identified the Crackers as containing "rice" – nor the ingredient list mentioned almond flour. (See, e.g., id. ¶¶ 4, 36)."); but see 21 C.F.R. §101.4(b) (requiring that "The name of an ingredient shall be a specific name and not a collective (generic) name" subject to certain exceptions, among which is not contained almonds).

For example, tomatoes are used in food processing in numerous forms – tomato paste, tomato puree, tomato jam, tomato sauce, tomato powder, diced tomatoes, etc.  Yet, a typical bottle of tomato sauce lists ingredients such as "Tomato Puree (Water, Tomato Paste), Diced Tomatoes," as opposed to the solitary word "tomatoes."   This is because (1) there are differences in the functional, sensory, textural, organoleptic, nutrient and other properties between the specific forms of an ingredient (i.e., tomato paste) and the collective name ("tomato"), which consumers understand as referring to a tomato that has not been processed and (2) the law requires it because it informs consumers of the processing steps which occurred with respect to transforming a raw, whole ingredient into part of a fabricated food.

---

[1] https://www.merriam-webster.com/dictionary/flour

Given that there is no logical method to convert whole almonds into shelf-stable crackers *without* reducing the almonds to a powdered form prior to blending and baking, the FAC's discussion of almond flour was entirely on point and relevant.  Defendant should be required to show the Court how it converts a whole almond into a cracker since "they do not" contain almond flour.

    C.    <u>Defendant Should be Judicially Estopped from Arguing that Traditional Foods Must Always be Made From Traditional Ingredients</u>

Defendant has been at the forefront of advocating for relaxed enforcement and requirements for using food names which have historically been associated with certain foods, like cow's milk.  Defendant should be judicially estopped from asserting that traditional foods can only be made with traditional ingredients, *viz*, crackers can only be made and are only expected to be made, from wheat or grain.

The equitable doctrine of judicial estoppel can be invoked at a court's discretion to prevent a party from "asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Isnady v. Village Of Walden*, No. 18-cv-02662 (S.D.N.Y. July 19, 2019) quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). The doctrine is intended to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 750.

Defendant's position in this case with respect to the naming conventions for foods is that "cracker" is inextricably linked with wheat or grain, rendering it implausible the modifying term, or descriptor which precedes it, could shake that connection.  However, in *Painter v. Blue Diamond Growers*, when defendant was advocating for its "almond milk," it took the completely *opposite* and inconsistent position from that advanced before this Court.  *Painter v. Blue Diamond Growers*,

No. 17-cv-55901, defendant's appeal brief, Mar. 2, 2018, Dkt. 22 at 32 ("By using the term "almond milk", even the least sophisticated consumer would know instantly what type of product they are purchasing") *compare with* Def. Motion at 7 ("Given "the fact of life" that crackers are made predominantly of grain, a reasonable consumer would understand that the Crackers do not contain more almonds than rice flour."); see *Painter v. Blue Diamond Growers*, No. 17-cv-559012018 WL 6720560 (9th Cir. Dec. 20, 2018) ("almond milk is not a "substitute" for dairy milk as contemplated by section 101.3(e)(1) because almond milk does not involve literally substituting inferior ingredients for those in dairy milk").

Defendant's position in *Painter* was correct and plausible, and supported by other decisions where plaintiffs claimed that products which merely contained the word "milk" in their name duped them into thinking they were buying cow's milk, or its equivalent. *Ang v. Whitewave Foods Co.*, No. 13-cv-1953, 2013 WL 6492353, at *3 (N.D. Cal. Dec. 10, 2013) ("Under Plaintiffs' logic, a reasonable consumer might also believe that veggie bacon contains pork, that flourless chocolate cake contains flour, or that e-books are made out of paper.); *Gitson v. Trader Joe's Co.*, No. 13-cv-01333, 2013 WL 5513711, at *12 (N.D. Cal. Oct. 4, 2013) (finding it implausible "that a reasonable consumer would believe that Organic Soy Milk is cow's milk and has the same qualities as cow's milk").

D.   <u>It is Plausible a Reasonable Consumer Would Expect the Almond Component to be Predominant</u>

Defendant's authorities all disregard the allegations of the FAC with respect to what a "cracker" can be expected to contain.  In opposition, defendant has offered conclusory assertions instead of consumer survey evidence or opinion polls showing that few consumers expect a product labeled "Almond Nut Thins" to contain more almond-derived material than from other ingredients.

10

The Second Circuit considered the context of the "made with whole grain" claim because grains are more typically associated with baked goods, as opposed to "real vegetables." *Mantikas*, 910 F.3d at 638; see *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461, at *10-12, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (dismissing "made with real vegetables" claim that alleged the products contained a significant amount of fresh vegetables and were healthy).

In *Solak v. Hain Celestial Group, Inc.*, the plaintiff alleged the products were misleading because "veggie straws" did not contain "whole ripe vegetables" and did not have "the same nutritional profile as potatoes or ripe vegetables." No. 17-cv-00704, 2018 WL 1870474, at *13 (N.D.N.Y. Apr. 17, 2018) (product name of "veggie straws" not misleading because "it [would] strain[s] the boundaries of the English language–to say that products made primarily from potatoes are not made of 'veggies'").

*Solak* was decided prior to the Second Circuit's decision in *Mantikas*, and relied heavily on the District Court's decision which was overturned. *Mantikas v. Kellogg Co.*, No. 16-cv-2552, 2017 WL 2371183, at *4 (E.D.N.Y. May 31, 2017),

## IV.   THE FAC ADEQUATELY PLEADS INJURY

New York state and federal courts as well as the Second Circuit often look for a "price premium" formulation in the pleadings to find cognizable injury, which is what the FAC provides. *Yee Ting Lau v. Pret A Manger (Usa) Limited*, No. 17-cv-5775 (S.D.N.Y. Sept. 28, 2018).

Defendant complains that Plaintiff has failed to "identify a comparison product" upon which she bases her price premium allegations and cites *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), for the idea that she must do so. *See* Def. Mem., pg. 10.  But the notion that injury cannot be alleged absent a comparison product has been

11

rejected by many other courts, making *Izquierdo* anomalous. *Daniel v. Mondelez Int'l, Inc.* held that "to the extent *Izquierdo* holds that Plaintiff must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory, *Izquierdo* contradicts the weight of the law in this Circuit. Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss." *Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177, 198 n.19 (E.D.N.Y. 2018).

As *Daniel* observed, a comparator product has never been a prerequisite of pleading a price premium under New York law. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481-82 (S.D.N.Y. 2014) (explaining that courts "have found valid [section] 349 claims despite plaintiffs not identifying competitors or prices" and that "while identifying the prices of competing products in the [c]omplaint would strengthen [the p]laintiff's allegation of injury," the allegations are not necessary to state a claim).

Since the standard at the pleading stage accepts the allegations of the FAC as true, it is not necessary or required for plaintiff to plead the location or time of her purchase, or what was her thought process when she purchased the Product. These facts can be learned in discovery and through a deposition.

## V.   PLAINTIFF'S UNJUST ENRICHMENT CLAIMS ARE ADEQUATELY PLEADED

Defendant's states an unjust enrichment claim is not available where it simply duplicates or replaces, a conventional contract or tort claim. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Though correct that "[A] plaintiff may not plead the same claim more than once, which would constitute a duplicative claim," the Federal Rules permit pleading claims which "provide alternative bases for relief." Fed. R. Civ. P. 8(d); *In re SKAT Tax Refund Scheme Litig.*, 356 F.Supp.3d 300, 325 (S.D.N.Y. 2019). The FAC's unjust enrichment is not duplicative of the

contract or tort claims because plaintiffs' consumer protection law claims may not succeed, yet the unjust enrichment claim would provide relief.  *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325-26 (S.D.N.Y. 2019).

## VI.  PLAINTIFF'S EXPRESS AND IMPLIED WARRANTY CLAIMS ARE SUFFICIENT

For warranty claims, New York law requires "(i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach.  *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 391 (E.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-313 (1)(a)); *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 642 (S.D.N.Y. 1999); *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1003 (N.Y. 1990).

### A.    Privity is Not Required

Defendant claims that absent privity of contract, plaintiff's express and implied warranty causes of action must fail. Def. MOL at 17 citing *Ebin v. Kangadis Food Inc.*, No. 13-cv-2311, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) and *Wick v. Wabash Holding Corp.*, 801 F.Supp.2d 93, 108 (W.D.N.Y. 2011) (privity required for implied warranty claim "except to recover for personal injuries"); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78 (N.Y. 1st Dep't 2004).

Defendant overlooks that the New York Court of Appeals "dispensed with the requirement of privity in this sort of case," where a remote purchaser seeks redress against a manufacturer for product defects which cause "injury, physical or pecuniary, resulting from misrepresentations." *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y. 2d 5 at 11, 13 (1962) (recognizing that in the age of mass media, "Manufacturers make extensive use of newspapers, periodicals and other

13

media to call attention, in glowing terms, to the qualities and virtues of their products, and this advertising is directed at the ultimate consumer or at some manufacturer or supplier who is not in privity with them.");  *Suarez v. Cal. Natural Living, Inc.*,. No. 17-cv-9847, 2019 WL 1046662, at *4 (S.D.N.Y. Mar. 5, 2019) (applying *Randy Knitwear* to express warranty claims due to defendant's "public advertising—namely, the products' labeling and the images of those labels allegedly displayed online.") *compare with* FAC ¶¶ 4-8 (describing, with images, the graphics and text appearing on the front, back and side panels of the Products); see also *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 287, 295-96 (S.D.N.Y. 2015) (statements on product labeling and packaging are "public advertising or sales literature" to which to which Randy Knitwear applies); *Mahoney v. Endo Health Solutions, Inc.*, No. 15-cv-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (applying Randy Knitwear and denying defendant's dismissal of plaintiff's express warranty claims based on defendant's statements that defendant's tablets contained a specific amount of fluoride); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *7 (E.D.N.Y. Sep. 26, 2016) (rejecting *Ebin* as against the weight of authority of case law in New York and finding that because "Plaintiff's claims are based on allegations related to Defendants' assertions in sales materials and advertisements," the express warranty claims should not be dismissed).

To the extent defendant argues that *Randy Knitwear* is no longer the law because it preceded New York's adoption of the UCC, this position is unsupported.  New York Uniform Commercial Code ("N.Y. U.C.C.") § 2-313(1)(a) ("Any affirmation of fact or promise *made by the seller to the buyer* which relates to the goods and becomes part of the basis of the bargain creates an express warranty") (emphasis added).

In fact, the commentary provides further support for *Randy Knitwear*, stating that "the

warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."  N.Y. U.C.C. § 2-313, cmt.2 (discussing express warranties).

Further, the UCC expanded the affected parties who could recover based upon a breach of express warranty if they are those who could "reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty."  N.Y. U.C.C. § 2-318 ("Third Party Beneficiaries of Warranties Express or Implied."); see FAC 76 ("The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages."  Here, plaintiff and consumers are the intended third-party beneficiaries of the express warranties, as they, not the retail stores, are the end-users.

Plaintiff should be allowed to marshal additional proof through discovery that they were in privity with defendant based upon her dealings with its agents and representatives at the retail level, and that defendant knew and accepted she was a third-party beneficiaries.

### B.    Defendant's Claim of Lack of Pre-Suit Notice is Conclusory

Defendant contends, without even a citation to statutory authority, that the warranty claims should be dismissed for lack of pre-suit notice.  Def. Motion at 18 but see  N.Y. U.C.C. § 2-607 ("Notice of Breach").  Those claims should be sustained because (1) determination of whether notice was given is a question of fact not to be decided on a motion to dismiss, (2) defendant fails to offer proof in admissible form that plaintiff *did not* notify defendant, (3) actual notice in some form was provided to defendant by virtue of the many consumers informally complaining and seeking reimbursement – including through phone calls to defendant and social media interactions with its representatives – of the issues described here and (4) service of the Complaint and FAC, which themselves constituted notice.

1.  Whether Notice is Sufficient is a Question of Fact

In New York, whether and to what extent notice is sufficient is a question of fact not susceptible to resolution on a motion to dismiss. *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at \*4-5 (S.D.N.Y. May 22, 1996). ("[T]he sufficiency and timeliness of the notice is generally a question for the jury.").

Defendant's failure to offer proof in admissible form that plaintiff did not comply with the notice provision is fatal to its argument.  In place of a properly sworn affidavit from defendant's mail clerk, describing the procedures and protocols related to directing mail and stating that their records indicate the absence of notice from plaintiff at or before the time the action was commenced, defendant proffers its attorney's conclusions.  However, because defendant's counsel does not have personal knowledge of whether defendant received pre-suit notice from plaintiff, the warranty claims must prevail at the pleading stage.

2.  Pre-Suit Notice Not Required

According to defendant, the warranty claims must be dismissed because plaintiff did not provide notice of the breach. See *Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 143 (E.D.N.Y. 2018) (dismissing breach of express warranty claim for lack of pre-suit notice); *Paulino v. Conopco, Inc.*, No. 14-cv-5145, 2015 WL 4895234, at \*1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") ; *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 544 (S.D.N.Y. 2013) (same); *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at \*12 (N.D.N.Y. Jan. 12, 2016) (dismissing breach of express warranty claim because plaintiff "failed to allege that he provided timely notice to Defendant of the alleged breach").

16

Defendant's argument fails to consider the line of New York Cases that create an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at \*19 (N.D.N.Y. Sept.28, 2000); See also *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) (overturning the Special Term and holding "the prescription of timely notice under the code provisions is to be applied, if at all, differently in commercial and retail sales situations."); *Silverstein v. R.H. Macy & Co.*, 266 A.D. 5, 9, 40 N.Y.S.2d 916 (1st Dep't. 1943) (finding that for the complaint to be sufficient, Plaintiff did not need a notice under section 130 of the Personal Property Law because the notice had no relation to goods for immediate human consumption. The Court further held that to require a complaint which indicates a notice of rejection or claim of damage within a reasonable time on account of defect of edible goods in a retail transaction, "would strain the rule beyond a breaking point of sense or proportion to its intended object."); *Kennedy v. F.W. Woolworth Co.*, 205 A.D. 648, 649, 200 N.Y.S. 121 (1st Dep't. 1923) (holding the similar provision of section 130 of Personal Property law, which was the predicate for section 2-607 of the UCC, was not applicable in situations involving goods sold for human consumption).

Even if the exception is inapplicable, Defendant had notice that a defect had manifested and had opportunity to cure by the time the FAC was filed, several months *after* the initial complaint.  Therefore, Plaintiff's breach of express (and implied) warranty claim is properly pled and Defendant's Motion to Dismiss this claim should be denied.

## VII.  PLAINTIFF PLAUSIBLY ALLEGES DEFENDANT'S FRAUDULENT INTENT

Defendant argues that Plaintiff fails to plausibly allege common law fraud because she fails to allege specific facts that give rise to a "strong inference of fraudulent intent."

17

However, Plaintiff's allegations do give rise to a strong inference that Defendant acted with either actual knowledge of its representations' falsity or with reckless disregard for their truth.  The failure to do so qualifies as reckless disregard for the truth, which satisfies the scienter requirement for fraud claims. See *Hughes v. Ester C Co.*, 930 F.Supp.2d 439, 473 (E.D.N.Y. 2013) ("Plaintiffs bolster this claim of alleged falsity awareness by pointing to an alleged lack of supporting scientific evidence for defendants' claims"); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("Rule 9(b) permits scienter to be demonstrated by inference").

## VIII.  PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs and reasonable consumers seek to be relieved from Defendant's continuing misleading and deceptive practices in the future, which is no more truthful today than when plaintiff first discovered the alleged deception.  *Ackerman v. Coca–Cola Co.*, 09–cv–395, 2013 WL 7044866, at *15 n. 23 (E.D.N.Y. July 18, 2013);

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because there is no indication that she intends to purchase any of the Products again, and is therefore unlikely to suffer any future injury. Def. Mem., pgs. 4-5. However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F.Supp.3d 440, 445 (E.D.N.Y. 2014). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." Id. See *Delgado v. Ocwen Loan Servicing Company, LLC*, No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.")

(internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

Some have argued that the policy considerations behind state consumer protection laws must yield to the Constitution. But there is no conflict between the two. The Supreme Court has held that "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This formulation thus presupposes that the proper party exists: The reference is to the proper party, whomever that happens to be, not to a proper party, who might or might not exist. And this is consistent with the reasoning of courts that have held injunctive relief to be appropriate in consumer fraud class actions: Given the specific conundrum intrinsic to these cases—that anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again—the usual application of the standing rule must be adjusted accordingly if there is ever to be a proper party, which the Raines formulation indicates there must be. In these cases, the proper party to request injunctive relief is the party that already has standing to request other forms of relief arising out of the same case or controversy. This is the best conceivable party given the very nature of the cause of action and the public interest. Article III does not require more than this. The alternative is a state of affairs in which those who need and are entitled to injunctive relief are epistemologically unable to act on that right while those who have the knowledge to do so are for this very reason legally disqualified from

19

doing so.

## IX.    CONCLUSION

Though "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Plaintiffs have not had an opportunity to amend their pleading in response to a Court order evaluating the sufficiency of his allegations. As the Second Circuit observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:    August 23, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

20

1:18-cv-05577-WFK-RER
United States District Court
Eastern District of New York

Dakota Campbell-Clark, individually and on behalf of all others similarly situated,

                         Plaintiffs,

      - against -

Blue Diamond Growers

                         Defendant

---

Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss

---

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
  Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  August 23, 2019

                                  /s/ Spencer Sheehan
                                 Spencer Sheehan